UNITED STATES DISTRICT COURT
NORTHERN DISTRICT NEW YORK

| | |
|---|---|
| JENNIFER DAUGHTRY, NATASHA SELLIN, BRITTANY LOPERGALO, Individually and on behalf of others similarly situated,<br><br>                              Plaintiffs,<br><br>      - against -<br><br>TGI FRIDAYS, INC., TGI FRIDAY'S NEW YORK LLC, and any related entities;<br><br>                          Defendants. | ***COMPLAINT***<br><br>**JURY TRIAL DEMANDED**<br><br>**CASE NO:** 5:24-cv-00709(GTS/MJK)<br><br>**FLSA COLLECTIVE AND CLASS ACTION** |

Plaintiffs, by their attorneys Gattuso & Ciotoli, PLLC and Virginia & Ambinder, LLP, allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      TGI Fridays, Inc. and TGI Friday's New York LLC (hereinafter "Fridays" or "Defendants") own and operate several Fridays restaurants throughout New York State.

2.      Named Plaintiff Jenifer Daughtry was employed by Defendants at its Syracuse, New York location.

3.      Named Plaintiffs Brittany Lopergolo, and Natasha Sellin are employed by Defendants at its Syracuse, New York location.

4.      Defendants determine, manage, control, and enforce all the terms and conditions of employment for all the Named Plaintiffs and similarly situated employees, making Defendants the ultimate employer of all the Named Plaintiffs and similarly situated class members.

5.      During all of Named Plaintiffs' employment with Defendants, Defendants

intentionally, repeatedly, and as a matter of corporate custom, policy, practice and/or procedure, failed to adhere to numerous laws, codes, and regulations governing the payment of wages to Named Plaintiffs and those similarly situated, both under New York State law and under the federal Fair Labor Standards Act ("FLSA").

6.      Specifically, and as hereinafter alleged, Defendants failed to pay Named Plaintiffs and those similarly situated wages and monies due them under both State and Federal law as required by the Fair Labor Standards Act at 29 U.S.C. § 201, *et. seq.*, 29 CFR §§ 541 and 779, *et. seq.*, New York Labor Law Articles 6, 7, and 19, and 12 NYCRR §§ 137 and 142, *et seq.*

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 201-219 (FLSA); 28 U.S.C. § 1331 (Federal Question); 28 U.S.C. § 1337 (Acts of Congress regulating Commerce); and supplementary jurisdiction under 28 U.S.C. § 1367 (State Claims).

8.      The statute of limitations for willful violations under FLSA, 29 U.S.C. § 255(a) is three (3) years.

9.      The statute of limitations for willful violations under New York Labor Law § 198(3) is six (6) years.

10.     The Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1391(b) & (c).

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c).

## PARTIES TO THIS ACTION

### The Named and Class Plaintiffs

12.     At all times materially relevant to this complaint, Plaintiff Jennifer Daughtry has

resided in Onondaga County, New York within the Northern District of New York. Jennifer Daughtry worked for Defendant from April 28, 2022, through January 19, 2024, in Destiny USA located at 9090 Destiny USA Dr, Syracuse, NY 13204. She worked as a Server but was made to also perform prep, cleaning and sanitation duties off the clock after the end of her shift. Up until March 2023 she was required to wear a uniform and apron.

13.     At all times materially relevant to this complaint, Named Plaintiff Brittany Lopergolo has resided in Onondaga County, New York within the Northern District of New York. Britany Lopergolo began working for Defendant July 1, 2021, in Destiny USA located at 9090 Destiny USA Dr, Syracuse, NY 13204. She has worked as a Server but has also been made to perform prep, cleaning and sanitation duties off the clock after the end of her shift. She is presently still employed by Defendant. Up until March 2023 she was required to wear a uniform and apron.

14.     At all times materially relevant to this complaint, Named Plaintiff Natasha Sellin has resided in Onondaga County, New York within the Northern District of New York. Natasha Sellin worked for Defendant from August 2021 to October 2021 and then from October 2023 through the present at Destiny USA located at 9090 Destiny USA Dr, Syracuse, NY 13204. During this time, she worked as a Server but has also been made to perform prep, cleaning and sanitation duties off the clock after the end of her shift. She is presently still employed by Defendant. Up until March 2023 she was required to wear a uniform and apron.

15.     Plaintiffs' claims for relief are against Defendant for:

  a.     (First Claim) Failure to pay the required Uniform Maintenance Pay to all employees in New York State required to wear a uform, in violation of 12 NYCRR 146-1.7;

  b.     (Second Claim) Failure to pay regular time and overtime for all time worked in violation of NYLL;

  c.     (Third Claim) Failure to pay regular time and overtime to the "hourly" employees for all time worked in violation of the FLSA;

d.    (Fourth Claim) Failure to raise the hourly rate of pay from the "tip credit" minimum wage to the regular minimum wage when performing non-tipped duties in violation of the FLSA and NYLL; and

e.    (Fifth Claim) Failure to Provide Proper Pay Statements and Annual Wage Notices in violation of NYLL 195.

16.    The proper similarly situated class of individuals for all Claims for Relief under the NYLL and FLSA are all persons paid an hourly rate of pay who at times relevant hereto worked in any of Defendants' Friday's Restaurants in New York State.

17.    Upon information and belief, the class consists of hundreds, estimating 20-30 hourly employees per store with an annualized turnover rate of 25%.

18.    There are questions of law and fact common to each of the above-described classes that predominate over any questions affecting only individual members. Only the amount of individual damages sustained by each class member will vary.

19.    The claims of the Named Plaintiffs are typical of the claims of each of the above-described classes in that all of the members of each class have been similarly affected by the acts and practices of the Defendants.

20.    The Named Plaintiffs will fairly and adequately protect the interest of the members of each of the above-described classes, and their interests are not adverse to the interests of the other members of either class.

21.    Collective action under FLSA § 216(b) and class action under the standards of Federal Rule of Civil Procedure § 23 (b)(2) and/or (3) are appropriate and superior to other available methods for the fair and efficient adjudication of the controversy.

**TGI Fridays, Inc. and TGI Friday's New York LLC**

22.    Defendants are private companies.

23.    Defendant TGI Friday's Inc. is located at 19111 Dallas Parkway, Suite 165,

Dallas, Texas, 75287, and is primarily responsible for payroll, accounts payable and financial processes for Defendants' Friday's restaurants.

24.     Defendants operate approximately 23 Fridays restaurants in New York State, including locations in Syracuse, Vestal, Rochester, Middletown, Rockeville Centre, Buffalo, New Burgh, Yonkers, Valley Stream, Levittown, White Plains, Riverhead, Amherst, Westbury, Forest Hills, West Nyack, Clifton Park, New York, Brooklyn, Saratoga Springs, Farmingville, Islip and Poughkeepsie.

## CLASS ALLEGATIONS

25.     Plaintiffs reallege and incorporate by reference all the allegations set forth above.

26.     This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.

27.     This action is brought on behalf of Named Plaintiffs and a class consisting of similarly situated hourly employees who worked for Defendants in both tipped Server positions and non-tipped positions, and were paid hourly wages who were required to work off the clock at times, were required to perform non-tipped duties while received the tipped hourly rate of pay, were not paid the required Uniform Maintenance Pay to all employees in New York State required to wear a unform, in violation of 12 NYCRR 146-1.7 and were not provided wage notices and proper pay statements in violation of NYLL 195 while working at Defendants' Friday's locations.

28.     Named Plaintiffs and potential Plaintiffs who elect to opt-in as part of the collective action are all victims of Defendants' common policy and/or plan to violate the FLSA and NYLL by failing to pay Named Plaintiffs and those similarly situated, neither all their earned regular hourly wages nor the minimum wage for all hours worked and overtime hours at one and one-half times their regular hourly wages for all hours worked in excess of 40 in a week.

29.     The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be hundreds of employees.  Additionally, the names of all potential members of the putative class are not known.

30.     The questions of law and fact common to the putative class predominate over any questions affecting only individual members.  These questions of law and fact include but are not limited to: (1) whether Defendants failed to pay the appropriate regular or minimum wage for hours up to 40 in a week and overtime wages for all hours worked in excess of 40 in a week; (2) whether Defendants violated 12 NYCRR 146-1.7; and (3) whether Defendants failed to provide wage notices and proper pay statements in violation of NYLL 195.

31.     The claims of the Named Plaintiffs are typical of the claims of the putative class members.  Named Plaintiffs and putative class members were all subject to Defendants' policies and willful practice of failing to pay regular and/or minimum wages and failure to pay overtime wages for all hours worked; as well as Defendants' failure to provide wage notices and proper pay statements as required by NYLL.

32.     Named Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.  Named Plaintiffs have retained counsel experienced in complex wage and hour collective and class-action litigation.

33.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The individual Named Plaintiff and putative class action members lack the financial resources to adequately prosecute separate lawsuits against Defendant. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendant's policies.

## FACTUAL BASIS FOR CLAIMS

**Named Plaintiff Jennifer Daughtry's Experience**

34.    Named Plaintiff Daughtry regularly worked as a Server at least 30 hours per week.

35.    Named Plaintiff Daughtry was required to wear a uniform that was a tee shirt with various Friday's logos prominently located on the shirt and an apron. Despite this, Defendant failed to pay her and those similarly situated the required New York State Uniform Maintenance Pay pursuant to 12 NYCRR 146-1.7.  Named Plaintiff Daughtry was only provided with two uniform, which was insufficient given that she worked six or seven shifts per week.

36.    Named Plaintiff Daughtry was a server and paid at the tip-credit minimum wage, below the regular minimum wage. However, Named Plaintiff Daughtry was regularly asked to perform duties such as cleaning the kitchen, sweeping the floors, dusting the lights, cleaning bottles, rolling silverware and other duties that are not those of tipped positions and are paid at the regular minimum wage, or higher. Named Plaintiff Daughtry spent approximately one hour every shift performing these non-tipped duties at the tipped credit rate of pay, especially when the restaurant was slow with seated customers. She also often witnessed her Server coworkers doing the same.

37.    Named Plaintiff Daughtry was regularly required to clock out and remain working unpaid to clean and roll silverware by managers Darcy Decker, Jeshua Rivers and Shawn Walker. She typically spent approximately six to 10 hours per week performing off-the-clock work at the direction of management.

38.    Named Plaintiff Daughtry witnessed the Defendant's above labor practices being carried out against her coworkers. For example, she witnessed other servers performing non-tipped duties while being paid the minimum wage and working off the clock. She is also aware that back of the house workers, such as cooks, and host/hostesses were also required to wear the

same uniforms but did not receive uniform maintenance pay. Named Plaintiff Daughtry estimates that the Syracuse location as approximately 10-12 servers, 10-15 back of the house workers and four to five host/hostesses at any one time. Named Plaintiff Daughtry believes the same or similar labor practices were carried out against those similarly situated hourly employees throughout Defendant's other New York locations.

**Named Plaintiff Brittany Lopergolo's Experience:**

39.     Named Plaintiff Lopergalo works as a Server for Defendant approximately 35 hours per week.

40.     From the beginning of her employment until approximately March 2023, Named Plaintiff Lopergalo was required to wear a uniform that was a tee shirt with various Friday's logos prominently located on the shirt and an apron. Despite this, Defendant failed to pay her and those similarly situated the required New York State Uniform Maintenance Pay pursuant to 12 NYCRR 146-1.7. Named Plaintiff Lopergolo was only provided with two uniforms, which was insufficient given that she worked five shifts per week.

41.     Named Plaintiff Lopergalo is a server and is paid at the tip-credit minimum wage, below the regular minimum wage. However, Named Plaintiff Lopergalo is regularly asked to perform duties such as cleaning the kitchen, sweeping the floors, dusting the lights, cleaning bottles, rolling silverware and other duties that are not those of tipped positions and are paid at the regular minimum wage, or higher. Named Plaintiff Lopergalo spends a substantial amount of her time performing these non-tipped server duties, especially when the restaurant is slow with seated customers. Plaintiff Barbagallo typically performs approximately five hours of non-tipped duties per week. She also often witnesses her Server coworkers doing the same.

42.     Named Plaintiff Lopergalo is regularly clocked out and remains working unpaid to clean and roll silverware. She typically performs off-the-clock work approximately three to five hours per week.

43.     Named Plaintiff Lopergalo witnessed the Defendant's above labor practices being carried out against her coworkers. For example, she has witnessed other servers performing non-tipped duties while being paid the minimum wage and working off the clock. She is also aware that back of the house workers, such as cooks, and host/hostesses were also required to wear the same uniforms but did not receive uniform maintenance pay. Named Plaintiff Lopergalo estimates that the Syracuse location as approximately 10-11 servers, 10-12 back of the house workers and three to four host/hostesses at any one time. Named Plaintiff Lopergalo believes the same or similar labor practices were carried out against those similarly situated hourly employees throughout Defendant's other locations.

## Named Plaintiff Sellin's Experience

44.     Named Plaintiff Sellin works as a Server for Defendant approximately 30-35 hours per week.

45.     From the beginning of her employment until approximately March 2023, Named Plaintiff Sellin was required to wear a uniform that was a tee shirt with various Friday's logos prominently located on the shirt and an apron. Despite this, Defendant failed to pay her and those similarly situated the required New York State Uniform Maintenance Pay pursuant to 12 NYCRR 146-1.7. Named Plaintiff Lopergolo was only provided with two uniforms, which was insufficient given that she worked five shifts per week.

46.     Named Plaintiff Sellin is paid at the tip-credit minimum wage, below the regular minimum wage. However, she is regularly asked to perform duties such as cleaning the kitchen,

sweeping the floors, dusting the lights, cleaning bottles, rolling silverware and other duties that are not those of tipped positions and are paid at the regular minimum wage, or higher. Named Plaintiff Sellin spends a substantial amount of her time performing these non-tipped server duties, especially when the restaurant is slow with seated customers. Named Plaintiff Sellin typically performs approximately five to 10 hours of non-tipped duties per week. She also often witnesses her Server coworkers doing the same.

47.     Named Plaintiff Sellin is regularly required to clock out and remain working unpaid to clean and roll silverware by management. In fact, managers Darcy Decker and Jeshua Rivers regularly require this and use the words, "Labor time is up" to justify the request. General manger "Mario" actually clocks her out himself and requires that she continue to work off the clock. She typically performs off-the-clock work for approximately 10 hours per week. This off-the-clock work brings Named Plaintiff Sellin's weekly hours to approximately 40 to 45 hours per week, and she is not compensated at one and one-half times the regular hourly rate for all hours worked over 40.

48.     Named plaintiff Sellin witnessed the Defendant's above labor practices being carried out against her coworkers. For example, she has witnessed other servers performing non-tipped duties while being paid the minimum wage and working off the clock. She is also aware that back of the house workers, such as cooks, and host/hostesses were also required to wear the same uniforms but did not receive uniform maintenance pay. Named Plaintiff Sellin estimates that the Syracuse location as approximately 10-12 servers, 10-12 back of the house workers and four host/hostesses.  Named Plaintiff Sellin believes the same or similar labor practices were carried out against those similarly situated hourly employees throughout Defendant's other locations.

49.     Examples of the required uniforms and aprons are as follows:







## **FIRST CLAIM FOR RELIEF**
## **VIOLATION OF 12 NYCRR § 146-1.7**

50.     Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

51.     The shirts and aprons worn by Named Plaintiffs and those similarly situated constitute a "required uniform" under 12 NYCRR § 146-3.10.

52.     Defendant must provide employees with "uniform maintenance pay" in amounts pursuant to the schedule at 12 NYCRR § 146-1.7(a).

53.     Defendant is not entitled to the protection of the "wash and wear" exception at 12 NYCRR § 146-1.7(b).

54.     The tee shirts cannot be routinely washed and dried with other personal garments because of the stains and smells from restaurant work.

55.     Defendant is liable to Plaintiff and the Class for an amount to be determined at trial.

56.     Named Plaintiffs and those similarly situated seek payment of all unpaid uniform maintenance pay, liquidated damages, interest, and attorneys' fees in an amount to be determined by the Court.

57.     Defendants should also be enjoined from continuing this conduct in the future.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY ALL WAGES UNDER NYLL**

58.     Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

59.     Pursuant to Article Six of the NYLL, workers such as Plaintiffs, are protected from wage underpayments and improper employment practices.

60.     Pursuant to Labor Law § 191 and the cases interpreting same, workers such as Plaintiffs are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

59.     Defendant failed to pay Plaintiffs their hourly wage for all hours worked.

60.     In failing to pay Plaintiffs proper wages for all hours worked and time and one-half for all hours after forty hours in one week, Defendant violated New York Labor Law

61.     Defendant willfully, knowingly, purposefully, and recklessly failed to pay Plaintiffs for all time worked, including time which would have qualified as overtime.

62.     By the foregoing reasons, Defendant violated NYLL and is liable to Plaintiffs in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**UNPAID WAGES AND OVERTIME UNDER FLSA**

63.     The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

64.     The Named Plaintiffs and similarly situated hourly employees of Defendant bring this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, *et seq*.

65.     Under the FLSA, Named Plaintiffs and similarly situated hourly employees are entitled to be compensated for all hours worked, including those hours articulated in the above Claims for Relief, where such time is compensable time and is also subject to the regular time and overtime provisions of sections 206 and 207 of the FLSA.

66.     Defendant willfully, knowingly, purposefully, and recklessly failed to pay Named Plaintiffs and similarly situated hourly employees for all time worked, including time which would have qualified as overtime.

67.     Upon information and belief, Named Plaintiffs and those similarly situated hourly employees frequently worked more hours than what they were paid for.

68.     On this claim for relief, the Named Plaintiffs on behalf of herself and other similarly situated hourly employees of Defendants seek the payment of all unpaid wages and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiff and other similarly situated employees.

69.     The Named Plaintiff and others similarly situated also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

## FOURTH CLAIM FOR RELIEF
### FAILURE TO RAISE THE HOURLY RATE OF PAY FROM THE "TIP CREDIT" MINIMUM WAGE TO THE REGULAR MINIMUM WAGE WHEN PERFORMING NON-SERVING DUTIES IN VIOLATION OF THE FLSA AND NYLL

70.     The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

71.     The Named Plaintiffs and similarly situated servers bring this Claim for Relief pursuant to the FLSA and NYLL.

72.     Under the FLSA and NYLL, the Named Plaintiffs and similarly situated servers are entitled to have their hourly rate of pay raised from the tipped credit minimum wage to the appropriate regular minimum wage when clocked in as a server but spending a substantial portion of their time performing non-tipped duties.

73.     Defendant willfully, knowingly, purposefully, and recklessly failed to pay Named Plaintiff and similarly situated servers the appropriate regular minimum wage during shifts in which they spent a substantial portion of their time performing non-tipped duties.

74.     On this Claim for Relief, the Named Plaintiffs on behalf of themselves and other similarly situated servers of Defendant the payment of the difference between the tip credit hourly rate of pay and the appropriate regular minimum wage for all hours worked during shifts in which they spent a substantial portion of time performing non-tipped duties, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiffs and other similarly situated employees.

75.     The Named Plaintiffs and others similarly situated also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA and/or NYLL.

**FIFTH CAUSE OF ACTION**
**FAILURE TO PROVIDE PROPER PAY STATEMENTS AND ANNUAL WAGE**
**NOTICES UNDER NYLL**

76.     Named Plaintiffs reallege and incorporate by reference all the allegations set forth above.

77.     Defendants have willfully failed to supply Named Plaintiffs and those similarly situated with wage notices, as required by NYLL § 195(1), in English or in the language identified

as their primary language, containing Plaintiffs rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names use by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus, such other information as the commissioner deems material and necessary.

78.    Named Plaintiffs and those similarly situated did not receive all the required wage notices during their employment with Defendants.

79.    Defendants have willfully failed to supply Named Plaintiffs and those similarly situated with accurate pay statements, as required by NYLL § 195(3), listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

80.    Failing to inform Plaintiffs of their regular rate of pay, and recording less hours on their paystubs than Plaintiffs worked each week, was part of Defendants' scheme to deprive Plaintiffs of their regular and/or overtime pay.

81.    By routinely providing Plaintiffs with inaccurate and/or misleading information, or by failing to provide information, Defendants made it more difficult for Plaintiffs to determine whether and to what extent they were underpaid each week, thus impinging on their rights and their ability to advocate for proper pay.

82.    Through their knowing or intentional failure to provide Named Plaintiffs and those similarly situated with the wage notices and statements required by the NYLL, Defendants have

willfully violated NYLL §§ 190 et. seq., and the supporting New York State Department of Labor Regulations.

83.     According to NYLL § 198-1(b), Named Plaintiffs and those similarly situated are entitled to $50 for every day in which they did not receive a wage notice, or a total of $5000, together with costs and reasonable attorney's fees.

84.     According to NYLL § 198-1(b), Named Plaintiffs and those similarly situated are entitled to $250 for every day in which they did not receive a pay statement, or a total of $5000, together with costs and reasonable attorney's fees.

85.     By the foregoing reasons, Defendants have violated NYLL §§ 195(1) and 198-1(b) and are liable to the Named Plaintiffs and those similarly situated in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

## DEMAND FOR TRIAL BY JURY

86.     Pursuant to Federal Rule of Civil Procedure 38, plaintiffs respectfully request a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that this Court assume jurisdiction herein and thereafter Named Plaintiff demands a trial by jury and judgment against Defendants on behalf of themselves and those similarly situated as follows:

a.     On the First Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to pay the uniform maintenance pay in violation of 12 NYCRR 142-1.7, as well as liquidated damages, and attorneys' fees in an amount to be determined by the Court;

b.     On the Second Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to provide required rest periods and to pay regular time and overtime for all time worked in violation of NYLL, as well as liquidated damages, and attorneys' fees in an amount

to be determined by the Court;

c.     On the Third Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to pay regular time and overtime to the hourly employees for all time worked in violation of the FLSA as well as the payment of all unpaid hours, liquidated damages, and attorneys' fees in an amount to be determined by the Court;

d.     On the Fourth Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to raise the hourly rate of pay from the "tip credit" minimum wage to the appropriate regular minimum wage when performing non-serving duties in violation of the FLSA and NYLL, as well as liquidated damages, and attorneys' fees in an amount to be determined by the Court; and

e.     On the Fifth Claim for Relief, equitable and injunctive relief as well as payment of all monies owed for failure to provide pay statements and annual wage notices in violation of NYLL, as well as liquidated damages, and attorneys' fees in an amount to be determined by the Court.

Dated:  May 24, 2024

VIRGINIA & AMBINDER, LLP

By:   */s/ James Emmet Murphy*
James Emmet Murphy, Esq.
Michele A. Moreno, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
jmurphy@vandallp.com
mmoreno@vandallp.com
Tel:  (212) 943-9080

And

By:   */s/ Frank S. Gattuso*
GATTUSO & CIOTOLI, PLLC
Frank S. Gattuso, Esq.
The White House
7030 E. Genesee Street
Fayetteville, New York
315-314-8000
fgattuso@gclawoffice.com

*Attorneys for the Plaintiff and putative class*